IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                                                                        Criminal No. 20-1231-WJ

RICKY ARNELL CHRISTIAN,

      Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
MOTIONS REGARDING COCONSPIRATOR STATEMENTS**

**THIS MATTER** is before the Court upon Defendant Ricky Christian's Motion for Production of Alleged Co-Conspirator Statements and for Pre-Trial Hearing on Their Admissibility (**Doc. 52**). The United States filed a Response (**Doc. 62**) seeking a pretrial ruling on the admissibility of numerous statements (**Doc. 62-1; Gov. Exs. 1 & 3–16**). Having conducted a *James* hearing,[1] reviewed the parties' submissions,[2] and considered the applicable law, the Court finds that only two Exhibits are admissible as coconspirator statements under Fed. R. Evid. 801(d)(2)(E). At the same time, however, the Court concludes that all the statements are admissible under Fed. R. Evid. 801(d)(2)(A) because they were made by a party opponent (and provide context). The dueling motions are therefore **GRANTED IN PART** and **DENIED IN PART**.

---

[1] "The strongly preferred order of proof in determining the admissibility of an alleged coconspirator statement is first to hold a '*James* hearing.'" *United States v. Urena*, 27 F.3d 1487, 1491 (10th Cir. 1994) (citing *United States v. James*, 590 F.2d 575 (5th Cir. 1979)).

    During an hours-long *James* hearing, the Court heard testimony from FBI Special Agent Mostaghni, received twenty-five exhibits into evidence, and heard arguments from counsel.

[2] The Court also reviewed and considered Mr. Christian's Reply (**Doc. 139**).

    In addition to the original briefing by counsel, the Court directed the parties to file supplemental briefing on any potential "buyer-seller" issues (**Doc. 187**). Mr. Christian filed his brief on July 26, 2024 (**Doc. 190**). The United States filed its brief on August 2, 2024 (**Doc. 191**).

1

## BACKGROUND[3]

On February 26, 2020, law enforcement executed a search warrant at 339 Grove Street SE, Apartment 2. The search warrant was based upon information that Mr. Christian and another gentleman—Mr. Rickey Rodgers—were selling narcotics out of this residence (**Doc. 62 at 1–2**). During the search, law enforcement found heroin, methamphetamine, cocaine, and firearms. Law enforcement also collected Mr. Christian's cell phone from his bedroom (*Id.* **at 4**). A search warrant was then obtained for the cell phone (*Id.* **at 7**). And ultimately, this phone was sent away for a digital extraction (**Doc. 62-1**).

Mr. Christian and Mr. Rodgers were indicted in short order (**Doc. 23**). Both Defendants were charged with several counts of possession with intent to distribute, a drug conspiracy, firearms related charges, and maintaining a drug-involved premises. Mr. Christian's co-Defendant pleaded guilty in 2020 (**Doc. 88**). Afterwards, a Superseding Indictment—naming only Mr. Christian—was filed (**Doc. 133**). The charges are functionally the same.

## ISSUE

The briefs at issue here revolve around the admissibility of "a series of text message conversations extracted from Mr. Christian's cell phone pursuant to a search warrant for that device." **Doc. 62 at 7**. The United States contends that these statements are admissible as either: (1) questions not intended as assertions, (2) statements of a party opponent, or (3) coconspirator statements. *Id.* **at 1**.

Mr. Christian disagrees. According to him, "none of the statements offered by the government qualify as coconspirator statements." **Doc. 190 at 1**.

---

[3] The parties are familiar with the facts, and the Court does not restate them in full here. Instead, what follows are only those facts necessary to explain the decision herein.

Here, the Court is required to answer two questions. First, are these statements admissible as coconspirator[4] statements? And second, irrespective of the answer to this first question, are the statements admissible on the other grounds offered by the United States?

## LEGAL STANDARD

Hearsay is generally inadmissible as evidence. Fed. R. Evid. 802; 2 MCCORMICK ON EVIDENCE §§ 244–46 (8th ed. 2020). Hearsay is a statement made by a declarant outside of "the current trial or hearing" that is offered into evidence "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(1)–(2). And a "statement" is "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Fed. R. Evid. 801(a).

If a declarant's words are not intended as an assertion; they are not a statement. If a declarant's statement is not offered for its truth; it is not hearsay.

The two bases for admitting the statements at issue here are Rules 801(d)(2)(A) and (E)—statements by a party opponent and statements by coconspirators, respectively.

First, statements of a party opponent are categorically excluded from the definition of hearsay under Rule 801. *See, e.g.*, *Janny v. Gamez*, 8 F.4th 883, 900 (10th Cir. 2021) ("[S]tatements of a party opponent are excluded from being hearsay."); *United States v. Smalls*, 752 F.3d 1227, 1241 (10th Cir. 2014) ("[S]uch statements are not hearsay because they are statements of a party opponent."); *United States v. Collins*, 575 F.3d 1069, 1073 (10th Cir. 2009) ("[A] party's own out of court statements offered against that party are not hearsay.").

Second, statements of a coconspirator are admissible as nonhearsay—so long as they are made "during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Prior to admitting

---

[4] The resolution of this first question hinges upon the United States establishing a conspiracy. *See United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). As explained below, no predicate conspiracy between the declarants and Mr. Christian was established. All that the United States proved was a myriad of buyer-seller relationships (which are insufficient to trigger coconspirator admissibility). *See infra* ¶ I.B.

a statement under Rule 801(d)(2)(E), the United States must prove a conspiracy. *See, e.g., United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021) (citing *Owens*, 70 F.3d at 1123); *United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007) ("A statement by a coconspirator of a party during the course and in furtherance of the conspiracy is not hearsay, and is therefore admissible." (cleaned up)); *United States v. Lahue*, 261 F.3d 993, 1008 (10th Cir. 2001) (noting that statements by a coconspirator are excluded from the hearsay prohibition).

## DISCUSSION

**I. Without a Conspiracy, the Coconspirator Exception Does Not (and Cannot) Apply**

It is well settled that that the United States must clear three[5] hurdles in order to establish the applicability of the coconspirator exception. *See, e.g., United States v. Hernandez*, 829 F.2d 988, 993 (10th Cir. 1987) (listing the three requirements); *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir. 1990) (explaining that "[w]e have established a three-part test for the admission of co-conspirator hearsay evidence"); *Urena*, 27 F.3d at 1490 (listing the "three-part test"); *Owens*, 70 F.3d at 1123 (same); *United States v. Sinclair*, 109 F.3d 1527, 1533 (10th Cir. 1997) (same). The three elements that the United States must prove by a preponderance of the evidence are: (1) a conspiracy existed; (2) the defendant and the declarant were members of the conspiracy; and (3) the statements were made during and in furtherance of the conspiracy.

In step one, to prove a conspiracy existed, the United States must demonstrate: (1) there was an agreement to violate the law; (2) the declarant knew the essential objectives of the conspiracy; (3) the declarant knowingly and voluntarily took part in the conspiracy; and (4) the

---

[5] The Tenth Circuit first outlined this test in *United States v. Andrews*, 585 F.2d 961, 964–66 (10th Cir. 1978). *Andrews* provided the test to be applied while *United States v. Petersen*, 611 F.2d 1313, 1330–31 (10th Cir. 1979) set out the preferred procedure. In short, *Petersen* adopted the "*James* hearing" aspect from the Fifth Circuit.

4

coconspirators were interdependent. *United States v. Rutland*, 705 F.3d 1238, 1249 (10th Cir. 2013) (citing *United States v. Ailsworth*, 138 F.3d 843, 850–51 (10th Cir. 1998)).

With these requirements in mind, the Court now applies the law to the facts.

### *A. No proof of declarants' involvement*

At the *James* hearing, the Court heard testimony from FBI Special Agent Mostaghni and received twenty-five exhibits from the United States—all of which are proper for the Court to consider. *Owens*, 70 F.3d at 1124 (explaining a district court has discretion to consider "any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial").

What this evidence shows is that a lot of people texted Mr. Christian. Almost every conversation revolved around drugs (**Gov. Exs. 1 & 3–16**). And both Mr. Christian and the buyers[6] use various forms of slang (or coded language) when discussing drugs.

What the United States did not prove, however, is that each of those individuals: (1) entered into an agreement with Mr. Christian to violate the law, (2) knew of the objectives or purposes of a drug trafficking conspiracy, (3) voluntarily took part in any conspiracy, or (4) acted interdependently to facilitate any conspiratorial objectives. As discussed below, *see infra* ¶ I.B.,

---

[6] In the Supplemental Brief (as well as during the *James* hearing), defense counsel refers to the buyer-side messages as "blue." **Doc. 190 at 4–6**. This is because the Appendix (**Doc. 62-1**) to the United States' Response (**Doc. 62**) shows the incoming messages on the lefthand side in blue text bubbles. The righthand side is the sender-side and is in green. The United States proved that the green messages were Mr. Christian—a point which defense acknowledged. *See* **Doc. 190 at 4** (describing the sender-side as "Mr. Christian" or 'green' . . . .).
  These previously filed messages (**Doc. 62-1**) were subsequently broken down into sixteen different text message conversations and re-filed with the Court (**Doc. 186**). These sixteen exhibits admitted during the *James* hearing are referenced in both parties supplemental briefing as "Exhibit 1–16."

the United States did not prove sufficient involvement in the conspiracy for thirteen out of fifteen of the proffered coconspirator Exhibits.

For most of these Exhibits, the United States fails at step one (as no conspiracy was established). Again, the United States needed to prove that Mr. Christian and the buyers shared "a common purpose or design." *United States v. Horn*, 946 F.2d 738, 740 (10th Cir. 1991). All the evidence shows is that Mr. Christian sold a lot of drugs. He sold those drugs to a lot of people. And he also appears to have maintained a drug-involved premises.[7] But Mr. Christian's purpose in the conspiracy was to sell narcotics and make money.

Aside from "UF6026"[8] and "UM7717," the buyers' purpose was simply to buy drugs for personal use. Thus, the evidence presented does not overcome the buyer-seller rule for Exhibits 1, 3–5, and 8–16. *See infra* ¶ I.B.

### B. The "buyer-seller" rule

An individual "does not become a party to a conspiracy . . . unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally." *Direct Sales Co. v. United States*, 319 U.S. 703, 709 (1943).

---

[7] The Court is not commenting on Mr. Christian's guilt or innocence. *See United States v. Chanthadara*, 230 F.3d 1237, 1248–54 (10th Cir. 2000) (discussing the contours of when a trial judge can, or cannot, comment on the evidence). Rather, the Court is explaining its findings based on the preponderance of the evidence following the *James* hearing (as is required). *See Hall*, 473 F.3d at 1302–03.
 The United States presented evidence that Mr. Christian's bedroom contained narcotics, currency, and multiple cell phones. Large amounts of cash and multiple cell phones located near a distribution-quantity of narcotics is powerful evidence of drug trafficking. *See, e.g., United States v. Rogers*, 556 F.3d 1130, 1135 (10th Cir. 2009) (describing testimony that a "large number of cell phones was consistent with the common practice of drug dealers to use multiple cell phones in conducting their business"); *United States v. Solomon*, 399 F.3d 1231, 1238 (10th Cir. 2005) (noting that carrying a loaded handgun with large sums of cash was indicative of drug-trafficking); *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991) (same). More importantly, the United States played video recordings wherein Mr. Christian admitted to possessing distribution level narcotics. *See* **Gov. Exs. 23A & 23B**.

[8] "UF" and "UM" stand for unidentified female and unidentified male. The four numbers that follow this abbreviation—6026 and 7717—are the last four digits of the phone numbers associated with these individuals. *See* **Gov. Exs. 6 & 7; Doc. 62-1 at 15–27 & 29–35**.

6

Phrased differently, "proof of a buyer-seller relationship alone is not enough to tie the buyer to a larger conspiracy." *United States v. Tennison*, 13 F.4th 1049, 1060 (10th Cir. 2021); *see also United States v. Ivy*, 83 F.3d 1266, 1285 (10th Cir. 1996); *United States v. Evans*, 970 F.2d 663, 673 (10th Cir. 1992) ("a buyer-seller relationship" is not enough); *Horn*, 946 F.2d at 741 ("casual transactions" are insufficient); *United States v. Dickey*, 736 F.2d 571, 585 (10th Cir. 1984) ("mere association" is not enough); *but see United States v. Flores*, 149 F.3d 1272, 1277 (10th Cir. 1998) (delivering drugs and acting as an intermediary is sufficient to overcome the buyer-seller rule).

For most of the text message exchanges, all the United States proved was a buyer-seller relationship. Absent the two caveats below, there is no proof that the sender of the blue messages (the buyers) and the sender of the green messages (the seller, Mr. Christian) shared a common purpose or objective. *Cf. United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992) ("Evidence that an intermediate distributor bought from a supplier might be sufficient to link that buyer to a conspiracy to distribute drugs because both buyer and seller share the distribution objective.").

A brief recap of the evidence presented, with particular focus on the drug quantities in each transaction, is illustrative. *See Tennison*, 13 F.4th at 1061 (explaining "a kilo" was indicative of conspiracy membership because it was not "personal usage").

| Exhibit | Request / Amount | USA's Position[9] | Conclusion |
|---|---|---|---|
| Gov. Ex. 1 | • "[H]ow much for half a zip of night night" | No longer seeking admission under 801(d)(2)(E) | Buyer-seller |
| Gov. Ex. 3 | • "Do you have any hard" | No longer seeking admission under 801(d)(2)(E) | Buyer-seller |

---

[9] The United States' Supplemental Brief concedes that "some of the text messages do not evince anything beyond a short-term buyer-seller relationship and therefore do not qualify as coconspirator statements." **Doc. 191 at 1**. The Court has incorporated an additional column in this chart to demonstrate the United States' position as to each previously proffered coconspirator Exhibit. In sum, though, the United States agrees that Exhibits 1, 3, 4, 5, 9, 10, 12, 13, and 15 are not coconspirator statements (**Doc. 191 at 2–5**).

7

| Gov. Ex. 4 | • "Is that black girl at home" | No longer seeking admission under 801(d)(2)(E) | Buyer-seller |
|---|---|---|---|
| Gov. Ex. 5 | • "Hey bro wud u do a dime of each? B and Crys" | No longer seeking admission under 801(d)(2)(E) | Buyer-seller |
| Gov. Ex. 6 | • "40 for c and 5 for other" | Admissible under 801(d)(2)(E) | Coconspirator[10] |
| Gov. Ex. 7 | • "How much a half of blk"<br>• "oz" | Admissible under 801(d)(2)(E) | Coconspirator[11] |
| Gov. Ex. 8 | • "Do a zip for it" | Admissible under 801(d)(2)(E) | Buyer-seller[12] |
| Gov. Ex. 9 | • "I really need half a gram of the darkness" | No longer seeking admission under 801(d)(2)(E) | Buyer-seller |
| Gov. Ex. 10 | • "Hey can you spot me a dime please" | No longer seeking admission under 801(d)(2)(E) | Buyer-seller |
| Gov. Ex. 11 | • "At least 40"<br>• "They want fifty" | Admissible under 801(d)(2)(E) | Buyer-seller[13] |

---

[10] As the United States aptly points out, "UF6026 engaged in a long-term relationship" with Mr. Christian. **Doc. 191 at 3**. In fact, the sender appears to be a buyer from Mr. Christian who is also a street-level seller herself. This is evidenced by the text message that "Not pennies but not makibg [sic] you millions yet." **Doc. 62-1 at 15; Gov. Ex. 6**. *See Ivy*, 83 F.3d at 1285–86 ("[T]he purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy."); *see also United States v. Roberts*, 14 F.3d 502, 513 (10th Cir. 1993) (explaining the buyer-seller rule is inapplicable because circumstantial evidence showed "more than a simple buyer-seller relationship").

[11] For similar reasons, the Court concludes "UM7717" is also a coconspirator. **Doc. 62-1 at 29–35; Gov. Ex. 7**. These conversations show that the sender in blue sells "Product" for Mr. Christian. *Ibid.* **at 34**. The fact these messages also discuss paying back "Atleast Half Of what I owe u[]," *ibid.*, is proof of more than an end user. *See Ivy*, 83 F.3d at 1285–86; *Roberts*, 14 F.3d at 513.

[12] These messages between "UF3819" and Mr. Christian simply show that the blue-side sender was interested in trading a "Romanian Draco" for "soft." **Doc. 62-1 at 38; Gov. Ex. 8**. Absent more, bartering is not demonstrative of membership in the conspiracy.

[13] It appears that "UM7223" previously offered to sell Mr. Christian a "gun," **Doc. 62-1 at 49**, but the United States' assertion that "provid[ing the defendant a firearm," **Doc. 191 at 4**, is proof of membership in the conspiracy is incorrect. Like the messages discussed above, the exchange between Mr. Christian and "UM7223" does not show anything more than an end-level user. *See* **Doc. 62-1 at 49–50; Gov. Ex. 11**.

| | | | |
|---|---|---|---|
| | • "When's the hard taco gonna be ready" | | |
| Gov. Ex. 12 | • "I got 2 half gallons of jack Daniels.....wud u swap"<br>• "ne drk r clr" | No longer seeking admission under 801(d)(2)(E) | Buyer-seller |
| Gov. Ex. 13 | • "Will u front me some clear and I'll pay u in the morning" | No longer seeking admission under 801(d)(2)(E) | Buyer-seller |
| Gov. Ex. 14 | • "We just got paid and want to get 100"<br>• "I need a 4d blk"<br>• "a dub of blk . . . I'm super [dope] sick" | Admissible under 801(d)(2)(E) | Buyer-seller[14] |
| Gov. Ex. 15 | | No longer seeking admission under 801(d)(2)(E) | Buyer-seller |
| Gov. Ex. 16[15] | • "Get a g ready" | Admissible under 801(d)(2)(E) | Buyer-seller |

Even if these messages can be construed as "further[ing] the defendant's drug-trafficking conspiracy"—as alleged by the United States (**Doc. 191 at 1**)—there is no proof that the declarants

---

[14] The messages between Mr. Christian and "UF9006" (**Doc. 62-1 at 56–66; Gov. Ex. 14**) do not indicate membership in the conspiracy. Instead, the sender appears to perpetually be short on cash. She asks for various drugs and promises to pay later—not because she will be reselling, but because she is (likely) an addict.

[15] Here, the "blue" message was sent from Mr. Rodgers—the former co-Defendant of Mr. Christian (**Doc. 191 at 5**). The United States certainly proved that these two individuals were involved in a drug trafficking conspiracy together. What the United States did not prove, however, is that these four messages were "in furtherance of" the conspiracy. See **Doc. 190 at 6**.

The sum total of the messages sent from Mr. Rodgers to Mr. Christian are: (1) "My folks on da way for 20 give her my leg junt she go bring it to me," (2) "Get a g ready," (3) "Gino house," and (4) "Icu dont fucc with me." **Doc. 62-1 at 71; Gov. Ex. 16**. Again, these messages were undoubtedly sent from one coconspirator to another. But they do not fit into Rule 801(d)(2)(E) because they are nothing more than "idle chatter of criminal partners." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993). None of these four messages are "connected with the operation of the conspiracy," nor do they serve an "immediate or future conspiratorial purpose." *United States v. Wolf*, 839 F.2d 1387, 1393 (10th Cir. 1988).

were members (aside from "UF6026" in Gov. Ex. 6 and "UM7717" in Gov. Ex. 7). None of the evidence presented shows anything more than "a retail drug transaction." *Flores*, 149 F.3d at 1277. There is no doubt these messages were made "in furtherance of" something—the issue, however, is that the something was not a conspiracy.[16] The vast majority of these drug deals were for a small quantity of narcotics—consistent with personal use.

Aside from Exhibits 6 and 7, no evidence was presented that any of these buyers resold the drugs on the street. *See United States v. Pickel*, 863 F.3d 1240, 1252 (10th Cir. 2017). The remaining thirteen Exhibits show nothing more than "[c]asual transactions" which are insufficient to prove a conspiracy. *Ivy*, 83 F.3d at 1286 (quoting *Horn*, 946 F.2d at 741). Someone who "merely purchases drugs . . . for personal use from a member of a conspiracy 'does not thereby become a member of the conspiracy.'" *Ibid.* (first quoting *Horn*, 946 F.2d at 741, then quoting *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990)).

In sum, the United States can only introduce Exhibits 6 and 7 as coconspirator statements. The remainder are inadmissible under Rule 801(d)(2)(E) because a conspiracy was not established.

## II. An Opposing Party's Statements Are Admissible

### A. Mr. Christian's words

Unfortunately for Mr. Christian, a party opponent's own statements are admissible against him.[17] *See United States v. Busch*, 758 F.2d 1394, 1397 (10th Cir. 1985). Here, the United States

---

[16] The Tenth Circuit has held the following kinds of statements are "in furtherance of" a conspiracy: (1) explaining events of importance, (2) statements providing reassurance, (3) informing one another about the current status of the conspiracy, (4) identifying a fellow coconspirator, (5) discussing future intent that sets transaction in motion, and (6) avoiding detection by law enforcement. *See, e.g., United States v. Williamson*, 53 F.3d 1500, 1520–21 (10th Cir. 1995); *United States v. Rutland*, 705 F.3d 1238, 1252 (10th Cir. 2013); *United States v. Alcorta*, 853 F.3d 1123, 1141 (10th Cir. 2017).

[17] The proponent of such evidence need only show, by a preponderance of the evidence, that the opposing party made the statement. *See United States v. Long*, 364 F.3d 1210, 1222 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1108 (2005).

presented sufficient evidence for the Court to conclude the phone belonged to Mr. Christian and that he sent the "green" messages. Specifically, the United States established: (1) the phone was found at the 339 Grove Street address, (2) Mr. Christian resided at this address, (3) the phone was located in Mr. Christian's bedroom, (4) Mr. Christian admitted the Samsung phone was his, and (5) messages show that "Tony" was the primary user of the phone. As for the "Tony" moniker, the United States presented evidence to establish that Mr. Christian went by the street name "Tony." *See* **Doc. 62 at 3**. This means that all of the above-referenced messages are admissible because they are his words. Fed. R. Evid. 801(d)(2)(A). In other words, Mr. Christian "cannot himself successfully complain about the use of statements which he made." *Busch*, 758 F.2d at 1397 (cleaned up). His own utterances—whether written or spoken—are admissible. *See, e.g., Alcorta*, 853 F.3d at 1142 ("[H]is text messages . . . [are] admissible against him under Rule 801(d)(2)(A) as statements by an opposing party."); *United States v. Harry*, 816 F.3d 1268, 1279 (10th Cir. 2016) ("A statement by a party is not hearsay when offered by the opposing party . . . so Defendant's texts could be offered by the prosecution." (internal citation omitted)); *United States v. Brinson*, 772 F.3d 1314, 1317 (10th Cir. 2014) ("Facebook messages do not constitute hearsay because they consist of statements of a party opponent."); *United States v. Quintana*, 70 F.3d 1167, 1170 (10th Cir. 1995) ("All the tapes admitted by the district judge consisted of conversations to which [defendant] was a party. Thus, the conversations were admissions by a party-opponent and not hearsay, pursuant to Fed. R. Evid. 801(d)(2)(A).").

Accordingly, these out-of-court statements (*i.e.*, Mr. Christian's text messages) are made by and offered against an opposing party. They are not hearsay and thus, they are admissible.

### B. The other declarants

What about all the "blue" messages? Those are admissible for two reasons.

First, the Rule Against Hearsay does not exclude statements if they are "not offered to prove the truth of the matter asserted." 2 MCCORMICK ON EVIDENCE § 246 (8th ed. 2020). Second, the Rule does not preclude the use of "out-of-court conduct . . . if it is not an assertion." *Ibid.*

### *1. These messages are not offered to prove truth*

"[T]estimony not offered to prove the matter asserted that is 'offered instead for relevant context or background' is not hearsay." *United States v. Becknell*, 601 F. App'x 709, 712 (10th Cir. 2015) (unpublished) (quoting *United States v. Hinson*, 585 F.3d 1328, 1336 (10th Cir. 2009)). The blue/buyer messages are not hearsay because they are being offered to show their effect on the other person in the conversation (here, that other person is Mr. Christian). *See United States v. Murry*, 31 F.4th 1274, 1291–92 (10th Cir. 2022). "Provid[ing] context" is a legitimate basis for admission. *See United States v. Smalls*, 605 F.3d 765, 785 n.18 (10th Cir. 2010).

All that matters is: (1) the messages were sent, and (2) Mr. Christian responded. The messages are not being offered to prove their truth—but instead to show how Mr. Christian responded. *See United States v. Twitty*, 689 F. App'x 890, 894–95 (10th Cir. 2017) (unpublished).

### *2. The messages are not assertive*

Secondarily, or alternatively, the United States explains the blue/buyer messages are non-assertive statements (**Doc. 62 at 12–13**). *See United States v. Cesareo-Ayala*, 576 F.3d 1120, 1128–29 (10th Cir. 2009) (finding questions assert nothing so they are not hearsay); *United States v. Summers*, 414 F.3d 1287, 1299–1300 (10th Cir. 2005) (questions and inquiries are not hearsay because they do not assert anything); *United States v. Jackson*, 88 F.3d 845, 847–48 (10th Cir. 1996) (explaining that the question, "Is this Kenny?" cannot reasonably be construed as an assertion); *Twitty*, 689 F. App'x at 894–95 (explaining orders are not hearsay because they are not offered for their truth).

These messages from prospective buyers are not "statements" as defined by Fed. R. Evid. 801(a) because they were not intended as assertions; instead, they were questions or requests for drugs. Demands, requests, orders, and questions generally are not hearsay because hearsay must be a statement, and something that is neither true nor false cannot be offered to prove the truth therein. *See Alcorta*, 853 F.3d at 1141; *cf.* Fed. R. Evid. 801(a). As such, they are admissible.

## CONCLUSION

In the end, Mr. Christian won the coconspirator battle, but lost the hearsay war. Even though the Court concludes that thirteen of the fifteen messages are inadmissible under Fed. R. Evid. 801(d)(2)(E), there is no doubt that all the messages are admissible under Fed. R. Evid. 801(d)(2)(A). Moreover, the incoming blue/buyer messages are admissible as nonhearsay for the purpose of lending context to Mr. Christian's statements and for their effect on the listener/receiver. Defendant's motion is therefore **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

/s/
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE